```
                UNITED STATES DISTRICT COURT

                     DISTRICT OF NEVADA

                             * * *

JUSTIN DODSON,                          )
                                        )
             Plaintiff,                 )
                                        )        3:12-CV-00021-LRH-WGC
v.                                      )
                                        )
RENOWN REGIONAL MEDICAL CENTER,         )
a Nevada non-profit corporation; UNITED )        ORDER
HEALTHCARE SERVICES, INC., A            )
Minnesota corporation; REMITTANCE       )
ASSISTANCE CORPORATION, a Nevada        )
Corporation; DOES I-X; ABC Corporations I-X,)
                                        )
             Defendants.                )
_____)
                                        )
RENOWN REGIONAL MEDICAL CENTER,         )
a Nevada non-profit corporation,        )
                                        )
             Counterclaimant,           )
                                        )
v.                                      )
                                        )
JUSTIN DODSON,                          )
                                        )
             Counterdefendant.          )
_____)
```

Before the Court is Defendant and Counterclaimant Renown Regional Medical Center's ("Renown") Motion for Default Judgment. Doc. #22.[1] Plaintiff Justin Dodson ("Dodson") did not file a Response.

---

[1] Refers to the Court's docket number.

**I.    Facts and Procedural History**

This action involves an unpaid hospital debt. Between October 1 and October 3, 2009, Renown admitted Dodson and provided him with emergency medical treatment. Doc. #12, ¶¶3, 10; Doc. #22, Mitchell Decl. ¶4. Because he was unconscious at the time of admission, his wife signed an Admittance Agreement on his behalf. Doc. #12, ¶5; Doc. #22, Ex. 1. Pursuant to the Admittance Agreement, Dodson's wife agreed that Dodson would be responsible for the costs of the medical services he received.[2] Doc. #12, ¶6; Doc. #22, Ex. 1. During his hospitalization, Dodson received a total of $35,103.25 in medical services from Renown. Doc. #12, ¶11; Doc. #22, Mitchell Decl. ¶9.

Following Dodson's hospitalization, Renown (via a third party service provider) made numerous attempts to contact Dodson. Doc. #12, ¶¶12-17; Doc. #22, Mitchell Decl. ¶12. On June 7, 2010, having received no response from Dodson, Renown sent his account to Remittance Assistance Corporation ("Remittance") for collections. Doc. #12, ¶18; Doc. #22, Mitchell Decl. ¶13. On December 4, 2011, Dodson contacted Renown for the first time since his discharge in October 2009. Doc. #12, ¶19; Doc. #22, Mitchell Decl. ¶14. Dodson indicated that the matter should have been billed to his insurance, United Healthcare Services, Inc. ("United Healthcare"). Doc. #12, ¶19. In February 2011, Renown billed United Healthcare $35,103.25. Doc. #12, ¶20; Doc. #22, Mitchell Decl. ¶15. United Healthcare discounted Renown's bill by 50% to $17,551.63,[3] and further determined that Dodson was responsible for $13,025.81. Doc. #12, ¶21; Doc. #22,

---

[2] The Admittance agreement states, in relevant part, "I understand that I will receive emergency medical treatment regardless of my ability to pay at the time of treatment. I further understand that charges for Hospital services provided to me for which I do not have insurance are payable in full at presentation of the bill unless application is made in writing for time payment arrangements. I accept full responsibility for all Hospital charges if the Hospital refers my account to an attorney or collection agency for collection." Doc. #22, Ex. 1.

[3] United Healthcare did not provide an explanation as to its decision to discount Dodson's medical bill. Nor did Renown agree to the discount. *See* Doc. #12, ¶21.

2

Mitchell Decl. ¶17; Doc. #22, Ex. 3.  Accordingly, United Healthcare determined it was responsible for the remaining $4,525.82, which it paid to Renown on April 11, 2011.  Doc. #12, ¶21; Doc. #22, Mitchell Decl. ¶16.  Renown received no other payments by Dodson or any other entity.  Doc. #12, ¶22.

Dodson initiated the underlying action against Renown, United Healthcare, and Remittance on July 28, 2011.  Doc. #1, ¶1.  His Second Amended Complaint alleges causes of action for (1) failing to timely process his insurance information and (2) not informing him that his debts were being reported to collections.  Doc. #8.  On December 17, 2012, Renown filed a Counterclaim against Dodson alleging (1) breach of contract and (2) unjust enrichment.  Doc. #12.  Following Dodson's failure to respond to or in any other way defend against Renown's Counterclaim, Renown filed a Notice of Intent to Take Default on January 18, 2013.  Doc. #13.  On February 6, 2013, the clerk of the court entered default against Dodson.  Doc. #19.  On October 8, 2013, the Court dismissed Dodson's complaint without prejudice for want of prosecution.  Doc. #21.

**II.     Legal Standard**

Obtaining a default judgment is a two-step process governed by Federal Rule of Civil Procedure 55.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  First, Rule 55(a) provides, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).  Nonetheless, while entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right."  *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted).  Rather, granting or denying relief is entirely within the Court's discretion.  *Id.* (citations omitted).  The Ninth Circuit has identified seven relevant factors in determining whether to grant default judgment including: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at

1  stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default
2  was due to the excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel*,
3  782 F.2d at 1471-72.

4　　　　　The Court takes the well-pleaded factual allegations in the non-defaulting party's complaint
5  as true, except as to the amount of damages. *Televideo Sys., Inc. V. Heidenthal*, 862 F.2d 915, 917-
6  18 (9th Cir. 1987). Where damages are not readily ascertainable from the record, the Court may
7  conduct a hearing on the issue of damages before entering default judgment. *Geddes v. United Fin.*
8  *Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Finally, "[a] default judgment must not differ in kind
9  from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

10　**III.　Discussion**

11　　　　　The Court has reviewed the documents and pleadings on file in this matter and finds that the
12  *Eitel* factors support entering a default judgment in this action. First, Renown will be severely
13  prejudiced if a default judgment is not entered because Dodson has shown a complete
14  unwillingness to appear or otherwise respond to Renown's efforts to make contact. Second,
15  Renown's claims for breach of contract and unjust enrichment are sufficiently pled and support its
16  requested relief. Third, the relief requested is directly related to the underlying medical services
17  provided to Dodson in October, 2009. Fourth, there is no excusable neglect for Dodson's failure to
18  participate in this action. Fifth, there is little possibility of dispute concerning the material facts
19  alleged in Renown's Counterclaim. Finally, although public policy favors a resolution on the
20  merits, the Court finds that a default judgment is warranted in light of the other *Eitel* considerations
21  and the fact that Dodson's unwillingness to participate precludes resolution on the merits.

22　　　　　The Court finds, however, that the amount of damages is not readily ascertainable from the
23  record. It is clear that the amount of damages is at least $13,025.81, the difference between United
24  Healthcare's discounted amount of $17,551.63 and what was paid to Renown by United
25  Healthcare, $4,525.82. However, the Court finds that there is insufficient evidence in the record to
26  support Renown's claim for $30,577.43. The Court invites Renown to provide evidence

substantiating its allegation that the reasonable value of the medical services provided to Dodson totals $35,103.25.

IT IS THEREFORE ORDERED that Renown's Motion for Default Judgment (Doc. #22) is GRANTED.

IT IS FURTHER ORDERED that Renown's Counsel may set a hearing on damages before the Court.  In the alternative, upon notice of acceptance by Renown within twenty (20) days of this Order or upon no response from Renown within twenty (20) days of this Order, the Court will award what it perceives to be undisputed damages in the amount of $13,025.81, determined by the difference between United Healthcare's discounted amount of $17,551.63, less the $4,525.82 paid by United Healthcare.

IT IS SO ORDERED.

DATED this 31st day of January, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

5